# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# ELKINS

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                                         **Criminal Action No. 2:12-CR-16**
                                                                  **(BAILEY)**

**WINSTON R. IRONS,**

    Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION/OPINION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation/Opinion on the Defendant's Motion to Suppress [Doc. 30] of United States Magistrate Judge John S. Kaull [Doc. 43]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Kaull filed his R&R on July 9, 2012 [Doc. 43]. In that filing, the magistrate judge recommended that this Court deny the defendant's Motion to Suppress [*Id.* at 9].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo*

1

review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); **Snyder v. Ridenour**, 889 F.2d 1363, 1366 (4th Cir. 1989); **United States v. Schronce**, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Kaull's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1). Defendant timely filed his objections on July 23, 2012, [Doc. 59]. Accordingly, this Court will review the portions of the R&R to which objection was made under a *de novo* standard of review. The remaining portions of the R&R will be reviewed for clear error.

I. Factual and Procedural History

After conducting a hearing on the Motion to Suppress on July 6, 2012, Magistrate Judge Kaull made certain findings of fact that this Court hereby adopts [*See* Doc. 43 at 2-5]. In particular, the magistrate judge found that Officer William Courtney received information from a confidential informant regarding the defendant driving to the Buckhannon area for a drug transaction [*Id.* at 2]. Although the confidential informant had not been used for an incident prior to the defendant's traffic stop, Officer Courtney had worked with this specific confidential informant in the past and the information provided by the informant on these other occasions was corroborated by other information [*Id.* at 2-3]. In addition, after looking into the defendant's criminal history, Officer Courtney found that the defendant's license had been revoked [*Id.* at 2].

Officer Courtney conveyed this information to another police officer, Officer Caynor, along with a description of the vehicle that the defendant would be driving and a mug shot of the defendant [Doc. 43 at 3]. Officer Caynor spotted the vehicle twice; the second time he was able to recognize the driver as the defendant based upon the mug shot provided

2

by Officer Courtney [*Id.*]. At that time, Officer Caynor followed the defendant until he pulled into a Walmart parking lot [*Id.*]. Officer Caynor began to engage the defendant in conversation regarding an outstanding Florida warrant until Officer Courtney arrived to assist because the defendant's criminal history created safety concerns [*Id.*]. When Officer Courtney arrived to assist, the officers had already contacted the K-9 unit [*Id.* at 4]. When retrieving the vehicle rental agreement, both officers witnessed the defendant take a white container out of the console and toss it in the back of the car [*Id.*]. When the container was later picked up by the police during a search of the vehicle, it was determined that the lid of the container was ajar.

Within five minutes, Sergeant Marshall Powers arrived with his trained narcotics dog [Doc. 43 at 4]. The dog alerted to the driver's side door on two occasions [*Id.*]. At this time, the officers searched the vehicle and discovered the following items, which were later seized: (1) ashes in the driver's side door, (2) marijuana seed in the driver's side door, (3) the white container in the backseat, which contained 3.6 ounces of cocaine, and (4) $7,000 in the glove box [*Id.*]. On the defendant's person, the officers discovered and seized the following items: (1) $18.25 in the defendant's right front pocket, (2) $551.00 in the defendant's left front pocket, and (3) a cell phone, which officers later discovered contained information indicative of narcotics sales after a search warrant for the phone was obtained [*Id.*]. After defendant failed to produce a valid driver's license or vehicle rental agreement containing his name, the police impounded the vehicle [*Id.*]. The police department have a policy to conduct an inventory search of all impounded vehicles. Under this policy, the entire vehicle is searched, including the glove compartment.

The defendant was charged with possession with intent to distribute cocaine in

violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) [Doc. 1 at 1-2]. On June 28, 2012, the defendant filed a Motion to Suppress [Doc. 30], requesting this Court to "suppress all of the Government's evidence related to the October 5, 2011[,] traffic stop . . ." [*Id.* at 1]. In support of the motion, the defendant argues that there was no probable cause for the traffic stop and that the subsequent search of the defendant's vehicle was warrantless and without the defendant's consent [*Id.*]. On July 5, 2012, the Government filed an Opposition to Defendant's Motion to Suppress [Doc. 39]. In its opposition, the Government argues that "the defendant's traffic stop and the search of his vehicle did not violate the defendant's Fourth Amendment rights" and the Motion to Suppress should, therefore, be denied [*Id.* at 3]. On July 9, 2012, Magistrate Judge John S. Kaull entered his R&R, in which he found that "all the evidence seized by the police . . . is admissible" and recommended that this Court deny the Motion to Suppress [Doc. 43 at 9]. On July 23, 2012, the defendant timely filed his objections to the magistrate judge's R&R [Doc. 59].

II. Applicable Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A vehicle stop without articulable, reasonable suspicion violates an individual's Fourth Amendment rights. **United States v. Wilson**, 205 F.3d 720, 724 (4th Cir. 2000). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." **Whren v.**

4

*United States*, 517 U.S. 806, 810 (1996) (internal citations omitted). "Any ulterior motive [that] a police officer may have for making the traffic stop is irrelevant." *United States v. Digiovanni*, 650 F.3d 498, 506 (4th Cir. 1992) (citing *Whren*, 517 U.S. at 810). Under the objective test adopted by the Fourth Circuit Court of Appeals ("Fourth Circuit"), when a police officer observes unlawful conduct, such as a traffic offense, the police officer's subsequent traffic stop is reasonable for purposes of analysis under the Fourth Amendment; this is true regardless of any subjective motives or suspicions that the police officer may have regarding unrelated criminal activity by the occupants of the vehicle. *United States v. Hassan El*, 5 F.3d 726, 730-31 (4th Cir. 1993).

The reasonableness of a traffic stop is analyzed under a two prong analysis. *Id.* (relying on *Terry v. Ohio*, 392 U.S. 1 (1968)). The Court must analyze whether the police officer's conduct was justified at the time of the stop and whether the subsequent actions taken by the police officer were "reasonably related in scope to the circumstances that justified the stop." *Id.* A police officer's observation of a traffic violation provides sufficient justification for detainment of "the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." *Branch*, 537 F.3d at 335 (internal citations omitted).

Having a trained dog sniff the perimeter of a vehicle that has been lawfully stopped in a public space is not a search for purposes of Fourth Amendment analysis. *United States v. Place*, 462 U.S. 696, 707 (1983). However, an "alert" by a trained narcotics dog constitutes probable cause for a search. *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994). Such a canine sniff, even if the K-9 Unit is called to the scene of a routine traffic

5

stop, is "constitutionally acceptable if performed within 'the time reasonably required' to issue a traffic citation." ***Branch***, 537 F.3d at 335. The Fourth Circuit has specifically held that a fifteen minute time period between a traffic stop and a search of the vehicle based upon probable cause from an "alert" by a trained narcotics dog "[does] not constitute an unlawful seizure in violation of the Fourth Amendment." ***Jeffus***, 22 F.3d at 557.

Under the "automobile exception" to the Fourth Amendment's warrant requirement, once probable cause to search a vehicle that is readily mobile has been established, police officers may conduct a warrantless search of the vehicle. ***Maryland v. Dyson***, 527 U.S. 465 (1999). Such a warrantless search may be "as thorough as a magistrate judge could authorize in a warrant 'particularly describing the place to be searched.'" ***United States v. Ross***, 456 U.S. 798, 800 (1982). This includes a search of any compartments or containers in the vehicle. ***Wyoming v. Houghton***, 526 U.S. 295, 302 (1999).

In circumstances where a search has exceeded its scope, seized items can still be admissible under the "inevitable discovery rule" if that evidence would have ultimately been discovered notwithstanding the constitutional violation. ***Nix v. Williams***, 467 U.S. 431 (1984). Vehicle inventory searches of cars that have been impounded by the police are a recognized exception to the Fourth Amendment warrant requirement. See ***Florida v. Wells***, 495 U.S. 1 (1990). This exception extends to closed containers inside the vehicle that are opened pursuant to a policy mandating the opening of such containers. ***Id.*** at 4. In addition, the Supreme Court of the United States has recognized that discretionary opening of a closed container in certain circumstances, including instances where the officer cannot determine the contents of the container from its exterior, is also

6

constitutionally acceptable.  *Id.*

## III.  Discussion

In his objections, the defendant argues that the confidential informant cannot be a foundation for probable cause because that confidential informant had not previously been used [Doc. 59 at 2].  The defendant also argues that the police officers had a drug investigation in mind before stopping the defendant because the defendant was never charged with driving revoked and the K-9 unit was contacted prior to the traffic stop [*Id.*]. In addition, the defendant argues that the police did not properly obtain consent to search the vehicle [*Id.*].  The defendant further states that the Government's "inevitable discovery rule" argument regarding a search incident to the impounding of the vehicle should fail because the owner of the vehicle was inside Walmart and could have driven the vehicle [*Id.*].  This Court addresses each argument in the following subsections.

### A.  Confidential Informant

In his objections, the defendant argues that the confidential informant cannot serve as a basis for probable cause because that informant had not been used by the police prior to this incident [Doc. 59 at 2].  However, Officer Courtney had worked with this specific confidential informant in the past, and the information provided by the informant on these other occasions had been corroborated.  In addition, the specific information provided by the confidential informant regarding the defendant driving in the Buckhannon area in the described vehicle was corroborated when Officer Caynor spotted the defendant driving the described vehicle in the Buckhannon area that same day.

Moreover, even if the information provided by the confidential informant cannot serve as the foundation for probable cause, Officer Caynor observed a violation of State

law when he identified the defendant as the driver of the vehicle. Ofcier Caynor was able to recognize the defendant from a mug shot, and he knew that the defendant did not have a valid driver's license. Accordingly, Officer Caynor had probable cause to believe that a traffic violation was occurring, making the decision to stop the vehicle reasonable. *See* **Whren**, 517 U.S. at 810. Accordingly, this Court finds that the magistrate judge's recommendation on this issue should be **ADOPTED** and the defendant's objection on this issue **OVERRULED**.

### B. Pretextual Stop

In his objections, the defendant argues that the stop was pretextual because the police had a drug investigation in mind before stopping the defendant for driving with a revoked license and the K-9 Unit had been contacted prior to the traffic stop [Doc. 59 at 2]. The defendant further argues that the stop was pretextual based upon the fact that he was not charged with driving revoked [*Id.*]. However, Officer Caynor observed the defendant driving a vehicle without a valid driver's license. Accordingly, under the objective test, Officer Caynor's traffic stop is reasonable based upon his observation of the defendant's traffic offense. *See* **Hassan El**, 5 F.3d at 730-31. The observation of the traffic offense is sufficient justification for the traffic stop, even if Officer Caynor suspected that the defendant was involved in criminal drug activity. *Id.* Accordingly, this Court finds that the magistrate judge's recommendation on this issue should be **ADOPTED** and the defendant's objection on this issue **OVERRULED**.

### C. Search without Consent

In his objections, the defendant argues that the police did not obtain proper consent

8

to search the vehicle [Doc. 59 at 2]. The defendant argues that he informed the police that he was not the owner of the vehicle and, therefore, not authorized to consent to the search [*Id.* at 1]. The defendant further argues that the owner of the vehicle was inside Walmart and the police failed to obtain the proper consent from the owner [*Id.*]. However, probable cause for the search was established when the trained narcotics dog "alerted positive" to the driver's side door. See ***Jeffus***, 22 F.3d at 557. Even though the K-9 Unit had been called to the scene of the traffic stop, the dog sniff occurred within five minutes of the traffic stop; accordingly, it was constitutionally acceptable. See ***id.*** (holding a fifteen-minute time period between the traffic stop and the dog sniff as constitutionally acceptable). Because the dog sniff established probable cause for a warrantless search, the search did not violate the defendant's Fourth Amendment rights. Accordingly, this Court finds that the magistrate judge's recommendation on this issue should be **ADOPTED** and the defendant's objection on this issue **OVERRULED**.

### D. Inevitable Discovery

In his objections, the defendant also argues that the "inevitable discovery rule" should not apply because the owner of the vehicle was inside Walmart and could have driven the vehicle [Doc. 59 at 2]. The defendant bases this argument upon testimony by the police that they have permitted friends or family members drive a vehicle away from a traffic stop when the driver had been driving illegally [*Id.*]. However, the police testified that the defendant's situation was different because he was driving a rental vehicle; furthermore, the defendant was not able to provide the police with a valid driver's license or a rental agreement for the vehicle. Accordingly, it was not unreasonable for the police to impound

9

the vehicle.

Moreover, once the vehicle was impounded, it was subject to police policy to conduct an inventory search. Under this policy, the entire vehicle would be searched, including the glove compartment. As such, the ashes and marijuana seed in the driver's side door and the money in the glove box would have been discovered during an inventory search and is admissible under the "inevitable discovery rule." Furthermore, the lid on the container in the back seat was ajar; as such, regardless of any policy on opening containers inside the vehicle, the inventory search would have likely identified the drugs inside this container. Therefore, this evidence is also admissible under the "inevitable discovery rule." Accordingly, this Court finds that the magistrate judge's recommendation on this issue should be **ADOPTED** and the defendant's objection on this issue **OVERRULED**.

IV. Conclusion

Upon careful review of the report and recommendation, it is the opinion of this Court that the magistrate judge's Report and Recommendation/Opinion **[Doc. 43]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the magistrate judge's report. As such, the defendant's Motion to Suppress **[Doc. 30]** is hereby **DENIED**. Furthermore, the defendant's Objections **[Doc. 59]** are **OVERRULED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** July 26, 2012.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE